**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAFAYETTE DIVISION**

| | |
|---|---|
| **MICHAEL KOFI ANNANG LARYEA** | **CIVIL ACTION NO. 26-209 SEC P** |
| **VERSUS** | **JUDGE EDWARDS** |
| **BRIAN ACUNA ET AL** | **MAGISTRATE JUDGE PEREZ-MONTES** |

**MEMORANDUM RULING AND ORDER**

Before the Court is a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 filed by Petitioner Michael Kofi Annang Laryea ("Laryea"), an immigration detainee at the Pine Prairie ICE Processing Center in Pine Prairie, Louisiana. ECF No. 1. The Government filed a Response and Supplemental Responses (ECF Nos. 6, 9, 10), Laryea filed a Reply (ECF No. 7).

After careful consideration of the record, the parties' memoranda, and the applicable law, the Petition is GRANTED.

## I. Background

Laryea is a native and citizen of Ghana. He entered the United States on or about January 3, 2024, near Otay Mesa, California. ECF No. 1 at 4. DHS served him with a Notice to Appear charging that he was present in the United States without admission or parole, in violation of INA § 212(a)(6)(A)(i), 8 U.S.C. § 1182(a)(6)(A)(i). *Id.*; ECF No. 1-2 at 1. Laryea was released the same day on a Form I-220A, Order of Release on Recognizance. ECF No. 6-1; ECF No. 9-1. The order states that the release was made "[i]n accordance with section 236 of the [INA] and the applicable provisions of Title 8 of the Code of Federal Regulations." ECF No. 6-

1. Laryea was required to report for immigration hearings or interviews, surrender for removal if ordered, comply with reporting requirements, notify DHS before changing residence, and obey federal, state, and local laws. *Id.* According to the Form I-213 Record of Deportable/Inadmissible Alien, Laryea was released on recognizance "due to humanitarian reasons and a lack of detention space." ECF No. 6-2 at 3.

Laryea alleges that he complied with the conditions of his release, including required ICE check-ins. ECF No. 1 at 12; ECF No. 7 at 2. He remained at liberty while his removal proceedings progressed for approximately 23 months.

On December 5, 2025, ICE officers arrested Laryea at the New York Immigration Court, where he had reported for a routine check-in. ECF No. 1 at 12; ECF No. 6-2 at 3; ECF No. 7 at 2. The Form I-213 state that he was "re-detained now that bedspace is available." ECF No. 6-2 at 3. The cancellation portion of the Form I-220A states that Laryea's release order was canceled because he was "taken into custody for removal." ECF No. 6-1; ECF No. 9-1.

The record before the Court does not show that Laryea received advance notice that DHS intended to revoke his release, an opportunity to respond before revocation, or an individualized custody determination before he was re-detained.

Laryea requested a custody redetermination and release on bond, which was denied for lack of jurisdiction. ECF No. 1-3 at 1.

On April 16, 2026, an Immigration Judge found Laryea inadmissible under INA § 212(a)(6)(A)(i), denied his applications for withholding of removal under INA

§ 241(b)(3) and the Convention Against Torture, and ordered him removed to Uganda. ECF No. 10-1 at 3-6. According to the EOIR Automated Case Information System, Laryea's appeal remains pending before the Board of Immigration Appeals. Accordingly, the removal order is not administratively final.

## II. Law and Analysis

Laryea argues that he is detained under 8 U.S.C. § 1226(a), rather than § 1225(b)(2)(A), and that he is therefore entitled to an individualized custody determination. He further asserts that, even if § 1225(b)(2)(A) supplies the governing statutory authority for his detention, the Government violated the Fifth Amendment by revoking his Government-created conditional liberty and re-detaining him without notice, an opportunity to be heard, or an individualized custody determination.

Respondents contend that Laryea is subject to mandatory detention under § 1225(b)(2)(A). They rely principally on *Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026), and assert that Laryea's recognizance release could be revoked under 8 U.S.C. § 1226(b) and 8 C.F.R. § 236.1(c)(9). ECF Nos. 6, 9.

### A. Statutory detention authority

In *Buenrostro-Mendez*, the Fifth Circuit held that noncitizens who entered without inspection and remained present in the United States are applicants for admission subject to mandatory detention under § 1225(b)(2)(A). Accordingly, *Buenrostro-Mendez* forecloses Laryea's contention that he is entitled to habeas relief

solely because § 1226(a), rather than § 1225(b)(2)(A), governs his custody. That conclusion, however, does not resolve Laryea's constitutional claim.

**B. Procedural Due Process**

The question is whether, after DHS affirmatively processed Laryea, released him on a recognizance order, and knowingly permitted him to remain at liberty under conditions of supervision for approximately 23 months, the Fifth Amendment required some individualized process before DHS revoked that liberty and returned him to physical custody.

As this Court has frequently recognized, the question of whether Congress authorized detention under § 1225(b) is analytically distinct from whether the Government may revoke a liberty interest without affording constitutionally adequate process. *See Diallo v. Trump*, 1:25-CV-2012, 2026 WL 1230389 (W.D. La. Mar. 5, 2026), *Kilic v. Acuna*, 1:25-CV-01928, 2026 WL 1652575 (W.D. La. June 8, 2026); *Ghughunishvili v. Trump*, 3:26-CV-00086, ECF No. 13 (W.D. La. Mar. 20, 2026); *Garcia-Gil v. Acuna*, 1:26-CV-00207, ECF No. 10 (W.D. La. April 29, 2026); *Andrade-Cunalata v. Wyatt*, No. 3:26-CV-01155 (W.D. La. July 16, 2026), *Gomez v. Acuna*, No. 1:26-CV-00220, 2026 WL 2111943 (W.D. La. July 22, 2026); *Sonuk v. Acuna*, No. 1:26-CV-01611, 2026 WL 2771703 (W.D. La. Sept. 17, 2026); *Isakova v. South Louisiana ICE Processing Center*, No. 6:26-CV-01481, 2026 WL 2790305 (W.D. La. Sept. 17, 2026).

Neither *Dep't of Homeland Sec. v. Thuraissigiam,* 591 U.S. 103 (2020), *Jennings v. Rodriguez*, 583 U.S. 281 (2018), nor *Buenrostro-Mendez* forecloses Laryea's

constitutional claim. As this Court observed in *Diallo*, those decisions address Congress's statutory detention authority and the scope of constitutional protections afforded applicants for admission, but they do not answer the distinct question whether due process permits the Government to revoke an existing liberty interest without any individualized procedure.

Accordingly, the Court again applies the balancing test established in *Mathews v. Eldridge*, 424 U.S. 319 (1976). Under *Mathews*, courts consider: (1) the private interest affected; (2) the risk of an erroneous deprivation through the procedures used and the probable value of additional procedural safeguards; and (3) the Government's interests, including the burdens of additional procedures.

**1. Private Interest**

"The interest in being free from physical detention" is "the most elemental of liberty interests." *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004); *Martinez v. Noem*, 5:25-CV-1007, 2025 WL 2598379, at *2 (W.D. Tex. Sept. 8, 2025). Although *Buenrostro-Mendez* establishes that § 1225(b) authorizes mandatory detention, it does not eliminate the private interest that developed after the Government processed Laryea, affirmatively released him subject to conditions, and knowingly permitted him to remain at liberty under its supervision.

Unlike cases involving individuals who lived in the United States without the Government's knowledge until their eventual apprehension, *see Sosnava-Rodriguez v. Ortega*, 26-50183, 2026 WL 1906557, at *15 (5th Cir. July 2, 2026), *reh'g en banc granted, opinion vacated*, 2026 WL 2014647 (5th Cir. July 10, 2026), Laryea's re-

detention did not arise from the Government's first discovery of his presence in the United States. Rather, DHS encountered him at or near the border, served him with an NTA, and released him under a Form I-220A expressly issued pursuant to INA § 236 and applicable regulations. ECF No. 1-2 at 1; ECF No. 6-1; ECF No. 9-1. The release order imposed conditions of supervision and required Laryea to remain in contact with immigration authorities. *Id.* Laryea alleges that he complied with those requirements. ECF No. 1 at 12; ECF No. 7 at 2.

Thus, whatever the legal characterization of Laryea's initial release, the Government's own actions created a substantial liberty interest in continued freedom pending an individualized basis to revoke that release. The first factor favors Laryea.

**2. Risk of Erroneous Deprivation**

The second *Mathews* factor likewise favors Laryea. The risk of erroneous deprivation is substantial where the Government revokes existing conditional liberty without advance notice, an opportunity to respond, or an individualized process. The records provide different explanations for Laryea's re-detention. The Form I-213 states that he was "re-detained now that bedspace is available," while the Form I-220A states that release was canceled because he was "taken into custody for removal." ECF No. 6-1; ECF No. 6-2 at 3; ECF No. 9-1. However, Laryea had not been ordered removed at that time, and there is still no executable order of removal because his appeal remains pending. Neither document identifies a violation of Laryea's release conditions or an individualized determination that he posed a flight risk or danger to the community. Nor does the Government identify any pre-

revocation notice, opportunity to be heard, or individualized determination explaining why revocation and immediate detention were warranted.

The Government relies on § 1226(b) and 8 C.F.R. § 236.1(c)(9), which authorize revocation of release at the Government's discretion. ECF No. 9 at 2-3. Those authorities may establish that DHS possesses statutory authority to revoke a prior release. They do not, however, answer the separate constitutional question of whether, and what, process is due before the Government withdraws a liberty interest that it granted and maintained for an extended period. *See Morrissey v. Brewer*, 408 U.S. 471, 482 (1972) (recognizing, in the parole context, that conditional liberty, even when subject to revocation, is a protected liberty interest).

Minimal procedural safeguards could reduce the risk of erroneous deprivation without altering the statutory detention framework. Notice of the basis for re-detention and an opportunity to contest the factual predicates for revoking Laryea's previously granted liberty would provide meaningful protection while leaving the ultimate statutory detention determination intact.

Because Laryea received no individualized process before his Government-granted liberty was revoked, the risk of erroneous deprivation weighs in favor of requiring additional procedural safeguards.

**3. Government's Interest**

The Government unquestionably possesses a substantial interest in enforcing the immigration laws enacted by Congress and in detaining those individuals whom Congress has made subject to § 1225(b).

Providing limited, individualized procedural protections before revoking a previously granted conditional release does not displace or negate § 1225(b)(2)(A). Rather, it requires only that the Government afford constitutionally adequate procedures before withdrawing liberty it has previously conferred. Due process protections remain applicable even when government authorities possess discretion to revoke supervision. *See Mendoza v. Noem*, 823 F. Supp. 3d 636, 649 (W.D. Tex. Feb. 26, 2026); *Lepe Hernandez v. Noem,* 5:26-CV-0694, 2026 WL 990024, at *4 (W.D. Tex. Apr. 13, 2026).

The Government has not shown that providing basic notice and an opportunity to be heard would impose a burden sufficient to outweigh the significant liberty interest at stake and the risk of error from categorical revocation without individualized process.

**C. Balancing Factors**

Balancing the three *Mathews* factors, the Court concludes that the Government violated Laryea's procedural due process rights by revoking his conditional liberty and re-detaining him without affording any individualized process.

This conclusion is consistent with this Court's prior decisions recognizing that *Buenrostro-Mendez* resolves the statutory question of detention authority, but not the separate constitutional question of whether the Government may revoke an established liberty interest without affording due process. It is also consistent with this Court's prior decisions distinguishing *Sosnava-Rodriguez*. *See Gomez*, 2026 WL

2111943, at *2; *Sonuk*, 2026 WL 2771703, at *2-3; *Isakova*, 2026 WL 2790305, at *3-4.

Because the Court concludes that Laryea is entitled to relief on his procedural due process claim, it need not address his remaining arguments for release.

## III. Conclusion

For the foregoing reasons, IT IS HEREBY ORDERED that the Petition for Writ of Habeas Corpus (ECF No. 1) is GRANTED. The Government is ORDERED to release Laryea from custody, with his personal property and with advance notice to his counsel, within seven days.

IT IS FURTHER ORDERED that the parties file a joint notice of compliance with this Order within 24 hours of Laryea's release.

IT IS FURTHER ORDERED that the request for attorney's fees under the Equal Access to Justice Act is DENIED. *See Barco v. Witte*, 65 F.4th 782, 785 (5th Cir. 2023).

THUS ORDERED AND SIGNED in Chambers this 23rd day of September, 2026.

Jerry Edwards, Jr.

JUDGE JERRY EDWARDS, JR.
UNITED STATES DISTRICT COURT